The plaintiff in this manner before you, counsel, we believe that the decision of the commission is against the manifest weight of the evidence because the arbitrator didn't take into consideration the clear medical testimony of the doctors as related in the reports. This is a situation where you have the doctor for the treater, for the employee, which is a Dr. Treister, and the respondent's IME doctor, Dr. Heller, both agree that this petitioner, Ms. Hill, can resume her work activities with restrictions. The petitioner never attempted to return to work, other than the fact that she said she tried to clean some houses. There was also some surveillance video that the arbitrator says he took a look at, but he summarily discounted that. When you look at the standard or the burden of proof it's on the employee in this situation to show that they've done everything they could to find at least suitable employment, here in this situation there's been nothing of that effect here. In most cases when a petitioner is looking for permanent total disability, there either has to be a medical finding by a doctor that the petitioner is medically disabled, or the petitioner would have to fall into what's called the odd lot category. And in that odd lot category the petitioner would have to show that she made at least a reasonable, diligent attempt to look for work, and there was no suitable employment. It appears that the only thing that the arbitrator based his decision upon was the fact that there's a vocational rehabilitation report from Ms. Susan Ettenberg, and that report reflects the fact that the employee based upon her age is totally incapable of any type of work. When you look at the record in this situation here, and I point to the deposition testimony which is part of the record of Susan Ettenberg, and she was asked whether or not Ms. Hill could return to work as a cashier, and the answer to that was no. Could she return to work as a hostess, and the answer to that was also no. And these are clearly things that the medical doctors, Dr. Treister and also Dr. Heller, have said that she could do. The only limitation that Dr. Heller, the difference between either of these doctors is the fact that Dr. Treister says she cannot engage in any sort of repetitive type of activity. There are positions at this employer that do not involve repetitive activity or overhead work such as a hostess, such as a cashier. And when you look at the report of Dr. Treister, which is part of Plaintiff's Exhibit Number 3, I would just, so I don't make any errors in it, I'd just like to read it right out of it. The doctor says, like any patient with a disability, should not now or in the future work at or above shoulder level. Also, she should not regularly lift above the light range, though the passage of time she may be able to lift in the lower moderate range. There's been nothing by any doctors to show that she is permanently disabled at all, medically. The one thing that Dr. Treister says... Let me stop you there. Sure. Does an employee need to be reduced to total physical incapacity before a permanent total disability award may be granted? No. No. That doesn't have to happen. But you have to make some showing that you look for work when you don't have a medical opinion. Even though you have a vocational expert that says there's no stable employment market or labor market for this woman? Wasn't that the bottom line of Entenberg's testimony? That is the bottom line of her testimony. But the problem with that testimony is that when you read her testimony, Entenberg is relying on her own personal observations as when she worked as a waitress years before. And there is no... There's no testimony that says that Susan Entenberg ever considered any other employment. She never said that she considered a cashier, although that was asked by her on cross-examination. Susan Entenberg never considered a position as a hostess. These are clearly things that this woman could perform within her job restrictions from the treating doctor. Treister. Treister's the treating doctor. Treister's the surgeon. Treister never said she's medically disabled. Well, what about the arguments that functioned in the commission to resolve the credibility of the witnesses and the Catholics? Could the commission, can't the commission, I should say, legitimately choose to believe Entenberg in her testimony? Of course they could. And that's what they've done in this situation here. However, they have to make, they have to follow and apply the law, and the law has been pretty clear for a number of years that when someone is in a category of medically being disabled, we rely on medical doctors. When someone is not medically disabled, as is the case here, then you have to have something further to show that at least a reasonable attempt to look for work was made. Does an injured employee have to make a reasonable attempt to work if the vocational consultants say that she's unsuitable because of her age, her education, language barriers maybe, or whatever other reasons, and there's no stable labor market for her? Why does she have to go look for work then? Well, there's, but there's no labor market survey ever made by Susan Entenberg. She says that she testified that she believed that there is no stable labor market for the claimant. That's what she said. But there was no facts to support that. Well, but she never said she consulted me. She's an expert. She can give her opinion. She have a contrary opinion from a vocational rehabilitation expert that you submitted her to? That there were jobs available for them? There was no contrary opinion submitted. Okay. I mean, you certainly had the opportunity to do it if you wanted to, didn't you? Well, I didn't have the opportunity, but you're right. That could have been done. All right. I mean, what she bases her opinion on or doesn't testify, it goes to weight. It doesn't go to admissibility. No one moved to strike her testimony as being a non-expert in nature, did they? But she still has to have some logical, reasonable basis for her opinion. Well, I mean, you can bring that on cross-examination and suggest that it goes to the weight. But she did testify that there is no stable labor market for this woman. She testified that because of her age, her eighth-grade education, the fact that she'd only been a waitress since she was 16 years old, and she couldn't work as a waitress within the treester's restrictions, that she wasn't an appropriate candidate for vocational rehabilitation, and there wasn't a stable labor market for her. That's Hattenberg's opinion. Either she's an expert or she wasn't. Ordinarily, when a person, an employee is released to return to work with restrictions, I think the first thing that they most of the time employees do is return back to their position within the doctor's restrictions. Having done Petitioner's work, that's one of the things I always tell my clients, go back to your employer. In this situation here, the employee, Ms. Hill, never did that. She never returned to her employer and said, do you have a position for me within the guidelines of Dr. Treaster? Did anyone offer her a position? She never returned. She never returned back. That wasn't my question. My question was, did anyone offer her one? Is there any evidence? There's no evidence that that was made. Yes, that's correct. But there's no evidence that she ever asked for a position. Ms. Hill testified that she didn't believe she could function as a cashier, but there was nothing medically to support that. Had she returned back to work as a cashier, she may have been able to return to work as a cashier, as a hostess. These are jobs that don't require any use of the arms or any lifting. And we just turned to a moment to the cases that we've cited. It's the burden is on the employee to show by a clear convincing evidence that she is a permanent total either medically or based upon an odd lot situation where she made a reasonable diligent attempt to look for work. She hasn't done that in either one of these situations. And Susan Enberg, her report is just pretty neutral on its face, saying that there is no labor job market. Well, where's the facts of that? Did Susan Enberg state that she went through the state computer and did any kind of an assessment? My question is more of a question of burden shift. Once she introduced Atkinsburg's expert opinion, that because of her age, prior work experience, her condition, she couldn't engage in stable and continuous employment. Didn't the burden shift to the employer to show exactly what job was available for her? Well, I would agree with you in that situation. However, the simplest thing for Hill to have done was to return back to the pancake house. I mean, she could have done a lot of things, but that wasn't my question. My question is, didn't the burden shift to the employer to come forward with evidence to show that regular work was available to her, and in this particular case, there is no such evidence? Well, there was, you know, when you, I look back at what the doctors have said in this situation. This is an arm injury case. It wasn't, you know, back surgery. It wasn't something that was going to disable somebody or completely debilitate them. Now, later on, this individual wound up with other medical issues that the doctors have said are not related to her original work injury. And there was some difficulty that the petitioner had during the course of her testifying. But again, maybe she wasn't eligible to work for other health issues, but not because she didn't, she made any reasonable, diligent attempt to look for work. Thank you. Counsel, please. May it please the Court, Counsel, Ann Louise Klepper appearing for the appellee, Jean Hill. In the ABBCE services case, this Court determined, and by the way, that was a case cited by the employer in its brief. This Court noted that it has long been established that the issue of whether an employee is permanently and totally disabled is a question of fact to be determined by the Workers' Compensation Commission, and that its determination will not be set aside on review unless it is contrary to the manifest weight of the evidence. That same ABBCE case set forth three bases upon which a finding of permanent total disability could be made. One of them is by a preponderance of the medical evidence. The second is by a diligent but unsuccessful job search or attempt to return to work. And the third is by demonstrating that because of the age, training, experience, education, and physical limitations of the injured employee, there is no stable labor market. It's not necessary to do all three. It is on this third basis that the Commission's determination was based. A certified and licensed vocational rehabilitation counselor, Susan Entenberg, testified that based upon Jean Hill's age, she was 62 years old, education, only eighth grade, experience and training, she had only worked as a waitress from the time she was 16 or 17, that there was no stable labor market for her and that she's not employable within the labor market. Your opponent argued that she didn't even go back to the employer and ask for some work there. Well, number one, the rules of the Commission have long required that when an employee cannot return to his or her regular occupation, the burden is on the employer to provide some kind of vocational assessment. But in any event, Ms. Hill was represented by counsel, so even if they were unable to contact her to offer her some kind of an employment within her restrictions, they could have contacted her through counsel, and there is absolutely no evidence of any effort to contact her to make her an offer of employment or to convey an offer of employment through counsel. So you're saying she didn't have to go to them? Correct, Your Honor. So the employee, I'm sorry, the employer had argued in its brief that their doctor was more credible than Dr. Treaster. I assume that that argument has been abandoned. The Commission set forth ample basis as it adopted the decision of the arbitrator as to why it found Dr. Treaster more credible. So in this case, we have a conclusion that the employee is unable to return to any kind of gainful employment, that there is no stable labor market for her that is supported by both medical evidence and by vocational evidence. As the Court noted, there was no contradiction to the opinion of Susan Enberg, and her opinion was well supported. Accordingly, there is no basis for arguing that the Commission's decision is against the manifest weight of the evidence, and under well-established case law, the Commission's decision should stand. Thank you. Thank you, Counsel Lubello. If it pleases the Court, I'll just take the last couple of moments here. When you look at Susan Enberg's, first of all, her report, and I believe it's the second page of her report, Susan Enberg did a generic job analysis, and it says that Ms. Hill has a job title as a waitress, and then described the duties, and for every duty it says, may ladle soup, may brew coffee, may perform other services, may clear and reset counters or tables. These are just vague generalizations. Without anything specific attached to these, if someone wants their opinion to be, to absolutely be not criticized, I believe that it would have been incumbent upon Ms. Enberg to take into consideration what the actual job duties were at that particular employer, the Golden Nugget. She didn't, Susan Enberg, didn't make any attempts to contact Golden Nugget and find out whether or not there was a position suitable for Mrs. Hill. But if Golden Nugget ever, what, they didn't care, they didn't say anything, you can come back to work here, could they? That's not in the record. You are correct, Your Honor. But at the same time... Tell the injured worker, we have a job for you. It's always up to the client to do that. I think the law puts the burden on both the employee and the employer, which has been what my experience has been over the years, which is what I've said to my clients, either as employers or employees, I think they both have to make some effort. I think that's what the Workers' Compact does, is it just doesn't... Well, what effort did the employer make? In this situation, none was asked of the employer to make any effort. None was asked, nothing was asked of the employer to do anything. The employer didn't refuse to hire this person. Well, but the employer doesn't have to do anything on its own. It has to be asked. The employer, you are correct, didn't do anything. However, the employer wasn't asked, so there was no rejection. But, you know, the case that counsel cited does stand for the proposition that the employee has some obligation other than just presenting a generic report that says things that are basically not been established. There's no... Susan Edberg's report and her testimony doesn't have any clear and convincing evidence that she's done anything to really base her opinion on other than her own observations. She doesn't make any effort to say that she's done anything affirmatively to... You're saying there's an opinion here, but there's no documentation to back it up. That's correct. Thank you.